John ROETTGEN, Petitioner,

v.

Stuart RYAN, Warden, Respondent.

Case No. CV 05–6554 R(JC).

United States District Court,
C.D. California.

June 30, 2009.

John Roettgen, Corcoran, CA, pro se.

Karen Bissonnette, CAAG—Office of Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

MANUEL L. REAL, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), all of the records herein, and the attached Report and Recommendation of United States Magistrate Judge. The Court approves and adopts the United States Magistrate Judge's Report and Recommendation.

IT IS ORDERED that Judgment be entered denying the Petition and dismissing this action with prejudice.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order, the United States Magistrate Judge's Report and Recommendation, and the Judgment herein on petitioner and counsel for respondent.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

JACQUELINE CHOOLJIAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Manuel L. Real, United States District Judge, pursuant to 28 U.S.C. Section 636 and General Order 05–07 of the United States District Court for the Central District of California.

### I. SUMMARY

On September 6, 2005, John Roettgen ("petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition"). Petitioner challenges convictions sustained in the Los Angeles County Superior Court (the "LASC"), claiming that his constitutional rights were violated because the trial court erroneously admitted certain physical and predisposition evidence, charged the jury in a manner which permitted it to convict him under a preponderance of the evidence standard, and sentenced petitioner to an upper term sentence and consecutive sentences based upon aggravating facts which were not found by a jury.[1]

On January 17, 2006, respondent filed an Answer (the "Answer").[2] On March 14, 2006, petitioner filed a Reply (the "Re-

ply"). On July 5, 2007, the Court ordered further briefing in light of *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). On August 27, 2007, respondent filed a supplemental answer ("Supplemental Answer"). On October 17, 2007, petitioner filed a reply to the Supplemental Answer (the "Supplemental Reply").

For the reasons discussed below, the Petition should be denied and the action should be dismissed with prejudice.

### II. PROCEDURAL HISTORY

On June 25, 2003, a jury convicted petitioner of ten (10) counts of committing a lewd act upon a child (counts 1, 2, 6–8, 14, 17–20), one count of oral copulation of a person under 16 years of age (count 4), and one count of continuous sexual abuse of a child (count 10).[3] (CT 423–24, 426, 428–36, 438–42; RT 3061–70). The jury also found true the allegation that petitioner committed the crime of lewd act upon a child against more than one child. (CT 437; RT 3067).

The trial court sentenced petitioner to a total of 69 years to life in state prison, consisting of an upper term sentence of 16 years on count 10, which the trial court deemed to be the base count, consecutive 15 year-to-life sentences on each of counts 2, 7 and 14, consecutive 2–year sentences on each of counts 6 and 8, and consecutive

---

1. Although the Petition also reflects that petitioner intended later to add additional claims which he was attempting to exhaust, such other claims are not currently before the Court.

2. Respondent concurrently lodged multiple documents ("Lodged Doc."), including the Clerk's Transcript ("CT") and the Reporter's Transcript ("RT").

3. The jury convicted petitioner of committing lewd acts upon Jason (count 1), Justin (count

2), Ernesto (counts 6–8, 17–20), and Damian (count 14), orally copulating Jonathan (count 4), and the continuous sexual abuse of Damian (count 10). (CT 423–24, 426, 428–36, 438–42; RT 3061–70). The jury also found petitioner not guilty of two counts of committing lewd acts upon Jonathan (counts 3, 5). (CT 425, 427). The trial court dismissed the remaining counts, which alleged that petitioner committed additional lewd acts upon Damian (counts 11–13, 21–23) and Ernesto (counts 9, 15–16). (CT 323–25, 343–46, 443–51).

eight-month sentences on each of counts 1, 4, 17, 18, 19 and 20. (CT 443–51, 461–65).

On June 14, 2004, 2004 WL 1302656, the California Court of Appeal affirmed the judgment of conviction. (Lodged Doc. D). On August 25, 2004, the California Supreme Court denied petitioner's petition for review without prejudice. (Lodged Doc. F).

## III. FACTS[4]

Petitioner was born on September 15, 1961. Between March 2000 and September 2001, he met five young boys through child-related community organizations and activities in which petitioner was involved. Each boy visited petitioner at his home and each testified that he was molested by petitioner.

### A. The Victims' Testimony
#### 1. Damian

Damian was born on September 26, 1987. In March 2000, when Damian was 13, he met petitioner, who offered to let Damian use his skateboard ramp. Damian and petitioner became friends, and Damian went to petitioner's house many times. Petitioner had video games in his bedroom, and Damian would play them. Other boys would also come to play at petitioner's house.

One day in the Spring of 2000, while they were watching a movie and lying in petitioner's bed, petitioner began touching Damian's penis. Damian took petitioner's hand off his penis, and petitioner told him to relax. Petitioner then orally copulated Damian until Damian ejaculated. Thereafter, petitioner orally copulated Damian eight-to-ten times on different occasions. Petitioner would also rub Damian's stomach and back, sometimes under Damian's clothes.

#### 2. Jonathan

Jonathan was born on July 27, 1986. His younger brothers are Justin and Jason. After Jonathan was ordered to do community service, he met petitioner, and began doing community service with petitioner's program. In June 2001, petitioner took Jonathan on a camping trip in the San Francisco area. On the second night of the camping trip, Jonathan and petitioner drank alcohol. Jonathan fell asleep and when he woke up, petitioner was orally copulating him. Jonathan asked petitioner what he was doing. Petitioner grabbed some napkins and said, "It's not what you think. You were wet down there." Jonathan demanded that petitioner take him home, which petitioner did. Before this incident, petitioner was always touching Jonathan's chest.

#### 3. Jason

Jason was born on June 22, 1987. Jason met petitioner between April 2000 and June 2001 through his brother Jonathan. In June 2000, when Jason was 14, he slept over at petitioner's house. Jason fell asleep on petitioner's bed while watching a movie. Petitioner awakened Jason by grabbing his penis. Jason pushed petitioner's hand away and rolled himself off the bed.

#### 4. Justin

Justin was born on October 9, 1988. He also met petitioner through Jonathan. One night in June 2001, Justin slept over at petitioner's house. Justin fell asleep and was awakened by petitioner, who was orally copulating him. Justin asked petitioner what he was doing, and petitioner then took Justin home.

---

4. The facts set forth are drawn from the California Court of Appeal's decision on direct appeal. (Lodged Doc. D). Such factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).

### 5. Ernesto

Ernesto was born on March 29, 1987. He met petitioner in a park. Between March 2000 and March 2001, Ernesto would go to petitioner's house to play video games. During that time, petitioner would want to touch Ernesto, and he did touch Ernesto on his lower abdomen, hips, chest, and "a little bit" on his penis.

### B. Prior Sexual Act Evidence

James was born on December 7, 1973. When he was eleven or twelve years old, he met petitioner. Petitioner worked with James' mother. Eventually petitioner moved into James' family's trailer. Petitioner and James slept outside the trailer in a tent. One morning when he was eleven or twelve years old, James woke up and petitioner was orally copulating him. Thereafter, petitioner orally copulated James regularly. When James' family broke up, James, his sister, and petitioner moved to Arizona, by which time petitioner had been molesting James for a year or more. Petitioner first raped James when James was thirteen or fourteen years old. Petitioner raped him a few times thereafter.

### C. Expert Testimony

According to the People's expert witness, a pedophile generally is a significantly older (ten years or more) person who prefers sex with children and whose fantasies focus on children. A child molester is a person who has engaged in illegal sexual activity with a child. The difference between a child molester and a pedophile is that a pedophile has "a specific sexual preference for children." Their fantasies, sexual fantasies, and sexual erotica focus on children. They may never molest a child but their sexual fantasies and preferences are for children. A child molester, however, may have a preference for sex with adults but may digress and have sex with a child. Not all child molesters are pedophiles and not all pedophiles are child molesters.

Child erotica can be anything that relates to children that the pedophile uses for sexual gratification. It can be anything, including a child's toy, game, book, drawing, or a stuffed animal. Pedophiles may join certain associations to get closer to children, including the North American Man–Boy Love Association ("NAMBLA"). NAMBLA's goal is to end the "oppression" of men and boys in consensual relationships and it publishes a newsletter that a person can get only by subscribing or becoming a NAMBLA member.

Two items were found in petitioner's home that the expert testified qualified as child erotica: a koala bear that was approximately seven to eight inches tall with male genitalia, and a June 1991 NAMBLA newsletter. The NAMBLA newsletter was in an opened envelope, and its cover story concerned a twelve-year-old boy's relationship with a 30–year–old man.

### D. The Defense

Petitioner denied he inappropriately touched the children. But he did admit he is a "touchy" person, and he had touched Ernesto in his upper body area over his clothes. Petitioner also introduced the testimony of two young men, Jose M. and Shane T., who spent time at petitioner's apartment. They both said that petitioner never touched them inappropriately.

Petitioner's friend and assistant, who had lived with petitioner since June 2000, drove with petitioner and Jonathan to and from the San Francisco Bay area. She did not notice anything unusual between petitioner and Jonathan. She also said that petitioner did not close the door to his bedroom when boys spent the night. Another work associate of petitioner's testified that petitioner worked well with children. A probation officer who referred children to petitioner for community ser-

vice had heard no complaints about petitioner behaving inappropriately.

## IV. STANDARD OF REVIEW

■ This court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[5] However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

■ "[C]learly established Federal law" under section 2254(d)(1) is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). In the absence of a Supreme Court decision that "squarely addresses the issue" in the case before the state court, *Wright v. Van Patten ("Van Patten"),* 552 U.S. 120, 128

S.Ct. 743, 746, 169 L.Ed.2d 583 (2008), or establishes an applicable general principle that "clearly extends" to the case before a federal habeas court to the extent required by the Supreme Court in its recent decisions, *Van Patten,* 128 S.Ct. at 745; *see also Panetti v. Quarterman,* 551 U.S. 930, 127 S.Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Carey v. Musladin ("Musladin"),* 549 U.S. 70, 76, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006), a federal habeas court cannot conclude that a state court's adjudication of that issue resulted in a decision contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *Moses v. Payne,* 555 F.3d 742, 760 (9th Cir.2009) (citing *Van Patten,* 128 S.Ct. at 747).

■ Ninth Circuit precedent may be persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law, and may also help determine what law is clearly established. *Sims v. Rowland,* 414 F.3d 1148, 1151 (9th Cir.), *cert. denied,* 546 U.S. 1066, 126 S.Ct. 809, 163 L.Ed.2d 637 (2005) (citations and quotation marks omitted). However, in light of *Van Patten* and *Musladin,* circuit law may not be used to fill open questions in the Supreme Court's holdings for purposes of federal habeas analysis. *Moses,* 555 F.3d at 760 (citing *Musladin,* 549 U.S. at 76, 127 S.Ct. 649 and *Crater v. Galaza,* 491 F.3d 1119, 1126 & n. 8 (9th Cir.2007) (explaining that, in *Musladin,* the Supreme Court "discussed and accepted" the principle that § 2254(d)(1) imposes "limits on the relevance of circuit precedent")), *cert. denied,* —— U.S. ——, 128 S.Ct. 2961, 171 L.Ed.2d 892 (2008).

■ A state court decision is "contrary to" clearly established federal law if: (1) it

---

5. The California Supreme Court's denial of review without comment generally constitutes an adjudication on the merits of any federal claims, thereby subjecting such claims to re-

view in federal habeas proceedings. *Hunter v. Aispuro,* 982 F.2d 344, 347–48 (9th Cir. 1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993).

applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts ... materially indistinguishable" from a decision of the Supreme Court but reaches a different result. *See Early*, 537 U.S. at 8, 123 S.Ct. 362 (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

■ Under the "unreasonable application" prong of section 2254(d)(1), a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Williams v. Taylor*, 529 U.S. at 413, 120 S.Ct. 1495.

■ "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citation omitted). "The state court's application must have been 'objectively unreasonable.'" *Id.* at 520–21, 123 S.Ct. 2527 (citation omitted); *see also Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir.) (under "unreasonable application" clause, federal habeas court may not issue writ simply because it concludes in its independent judgment that relevant state court decision applied clearly established law erroneously or incorrectly; rather, application must be objectively unreasonable), *cert. denied*, 540 U.S. 968, 124 S.Ct. 446, 157 L.Ed.2d 313 (2003). The habeas petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002).

■ In applying these standards, federal courts look to the last reasoned state court decision. *See Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir.2006) (citation and quotations omitted). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *see also Gill v. Ayers*, 342 F.3d 911, 917 n. 5 (9th Cir.2003) (federal courts "look through" unexplained rulings of higher state courts to the last reasoned decision). However, to the extent no such reasoned opinion exists, courts must conduct an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law, and consequently, whether the state court's decision was objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir.2000).

■ When it is clear, however, that the state court has not decided an issue, review of such issue is *de novo*. *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006).

## V. DISCUSSION

### A. The Trial Court's Admission of the Disputed Evidence Does Not Merit Habeas Relief

Petitioner contends that the trial court constitutionally erred in admitting (1) evidence of a stuffed, "sexualized" koala bear and a NAMBLA bulletin seized from petitioner's apartment; and (2) predisposition evidence regarding petitioner's prior sexual acts with another child, James, for which petitioner was not on trial.[6]

6. Respondent maintains that petitioner's due process claims concerning the koala bear and NAMBLA bulletin are unexhausted because petitioner did not fairly present the federal basis of such claims to the California Supreme Court. (Answer at 8). Even assuming respondent is correct, it would not affect the

### 1. Background

At trial, the prosecution sought to introduce an anatomically-correct koala bear with a penis and testicles and a NAMBLA bulletin seized from petitioner's apartment as evidence to show petitioner's intent in touching the boys. (RT 1213–14, 1366–67, 1506–08).[7] Petitioner's counsel objected that the probative value of such evidence was outweighed by potential prejudice. (RT 1366–67). The trial court ruled that the prosecution could introduce the NAMBLA bulletin. (RT 1368). After hearing foundation on the potential meaning of having a sexualized stuffed animal,[8] the trial court also ruled that the prosecution could introduce the koala bear. (RT 1911).

The police detective who searched petitioner's apartment then testified that she seized a koala bear qualifying as child erotica from petitioner's apartment, and the koala bear was shown to the jury and admitted into evidence. (RT 1911–13, 2209–11). The detective also testified that she seized a NAMBLA magazine from petitioner's bedroom featuring a story of a 12–year–old boy and his relationship with an adult male, and the magazine was shown to the jury and admitted into evidence. (RT 1913–19, 2209–11).[9]

At trial, the prosecution also sought to introduce the testimony of James, a man who was then 29 years old and in custody for second degree burglary, concerning pe-

outcome of this matter as this court also concludes, based upon a *de novo* review, that it is perfectly clear that petitioner's claims are not colorable. *See Cassett v. Stewart,* 406 F.3d 614, 623–24 (9th Cir.2005), *cert. denied,* 546 U.S. 1172, 126 S.Ct. 1336, 164 L.Ed.2d 52 (2006); 28 U.S.C. § 2254(b)(2).

Respondent also maintains that petitioner's due process claim for the admission of the predisposition evidence is procedurally barred because the Court of Appeal found that petitioner waived this argument by failing to object at trial on due process grounds. (Answer at 10–11) (citing Lodged Doc. D at 10 n. 4). This court need not resolve the procedural default issue because petitioner's claim fails on its merits. *See Lambrix v. Singletary,* 520 U.S. 518, 523–25, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997); *Franklin v. Johnson,* 290 F.3d 1223, 1229, 1232–33 (9th Cir.2002); *see also Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir.), *cert. denied,* 528 U.S. 846, 120 S.Ct. 120, 145 L.Ed.2d 102 (1999) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against the petitioner while the procedural bar issues are complicated"). The court notes, however, that even under a *de novo* standard of review, petitioner's claim should be rejected because it is perfectly clear that it is not colorable.

7. As noted above, petitioner was convicted of ten counts of committing lewd and lascivious acts upon a child, in violation of California Penal Code section 288(a). (CT 296–318).

Section 288(a) requires a showing that the offender committed the acts "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." *See* Cal.Penal Code § 288(a).

8. The investigating detective in petitioner's case qualified as an expert in investigating child sexual abuse cases and in child molestation and pedophilia. (RT 1897). The detective testified that "NAMBLA," the North American Man–Boy Love Association, is an organization that pedophiles typically join which propagates sexual relationships between men and boys. (RT 1905, 1914–15). The detective also testified that a pedophile's child erotica, which may be used for sexual gratification or to validate the pedophile's behavior or to relive a childhood experience, can include a stuffed animal. (RT 1908–09).

9. Petitioner testified that he took the koala bear from Shane T., a child who was at petitioner's apartment and who was going to take the koala to school. (RT 2552–53). However, although Shane T. testified prior to petitioner, petitioner did not elicit any testimony from him regarding the koala bear. (RT 2124–50). Petitioner admitted that he had the NAMBLA bulletin since 1991, but testified that he had received it when he was in prison in Arizona, that he most likely had not looked at it since then, and that he had forgotten that he had it. (RT 2257–58).

titioner's earlier acts of child molestation for which petitioner was not on trial. (RT 1808, 1861–62). Petitioner's counsel sought to have the evidence excluded as more prejudicial than probative. (RT 1808). The trial court found that the probative value of the evidence concerning James, which went to petitioner's predisposition to molest, outweighed any prejudicial effect, and allowed the prosecution to present James' testimony. (RT 1809). James testified to the facts set forth in Part IIIB, *supra.*

The Court of Appeal rejected petitioner's claims that the trial court erred in allowing this evidence to go to the jury, reasoning that: (1) the trial court's admission of the predisposition evidence and NAMBLA bulletin was proper under state law; and (2) any error in admitting the koala bear was harmless given the strength of the evidence against petitioner.[10] (Lodged Doc. D at 7–11). The Court of Appeal emphasized that five victims testified, each said petitioner touched their genitals, and James provided testimony regarding similar acts of molestation. (Lodged Doc. D at 10).

### 2. Discussion

■■■ First, to the extent petitioner claims that he is entitled to habeas relief because the trial court's admission of evidence violated the California Evidence Code or other state law, his claims are not cognizable on habeas review. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The correctness of a state evidentiary ruling presenting only an issue of state law is not cognizable on federal habeas corpus review. *Id.* at 67–68, 72, 112 S.Ct. 475; *Dubria v. Smith,* 224 F.3d 995, 1001 (9th Cir.2000) (en banc), *cert. denied,* 531 U.S. 1148, 121 S.Ct. 1089, 148 L.Ed.2d 963 (2001); *see also Windham v. Merkle,* 163 F.3d 1092, 1103 (9th Cir.1998) ("We have no authority to review alleged violations of a state's evidentiary rules in a federal habeas proceeding. Our role is limited to determining whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process.") (internal citation omitted), *cert. denied,* 541 U.S. 950, 124 S.Ct. 1689, 158 L.Ed.2d 380 (2004).

■■■ Second, petitioner's claim relative to the predisposition evidence, to the extent construed as a constitutional claim, fails because the Supreme Court has expressly reserved the question of whether using evidence of a defendant's past crimes to show that he has a propensity for criminal activity could ever violate due process. *Larson v. Palmateer,* 515 F.3d 1057, 1066 (9th Cir.) (citing *Estelle,* 502 U.S. at 75 n. 5, 112 S.Ct. 475), *cert. denied,* —— U.S. ——, 129 S.Ct. 171, 172 L.Ed.2d 123 (2008). Because the Supreme Court has expressly left this issue an open question,

---

10. The Court of Appeal applied the harmless error standard enunciated in *People v. Watson,* 46 Cal.2d 818, 836, 299 P.2d 243 (1956), *cert. denied,* 355 U.S. 846, 78 S.Ct. 70, 2 L.Ed.2d 55 (1957), which California state appellate courts use in reviewing non-constitutional magnitude, trial type errors. *See Bains v. Cambra,* 204 F.3d 964, 971 n. 2 (9th Cir.) (citation omitted), *cert. denied,* 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000). In applying the *Watson* standard, California state appellate courts determine whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." *Id.* This standard under California state law is the equivalent of the *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) standard under federal law, to wit, whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* (citations and internal quotations omitted).

the state court could not have unreasonably applied clearly established federal law in determining that the admission of James' testimony did not violate due process. *See Larson,* 515 F.3d at 1066.

■ Third, even analyzing the admission of the predisposition evidence and the admission of the NAMBLA bulletin and koala bear under due process standards, plaintiff's claims fail on their merits. To obtain federal habeas relief based upon a state court's admission of evidence, a petitioner must show that the admission of the evidence was so prejudicial as to deny the petitioner his right to due process and a fair trial. *Estelle,* 502 U.S. at 72, 112 S.Ct. 475; *see also Jammal v. Van de Kamp,* 926 F.2d 918, 919 (9th Cir.1991) (issue on federal habeas review is "whether the admission of the evidence so fatally infected the proceedings as to render them fundamentally unfair"). "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown,* 404 F.3d 1159, 1172 (9th Cir.), *amended on reh'g,* 421 F.3d 1154 (9th Cir.2005). The "[a]dmission of evidence violates due process only if there are *no* permissible inferences the jury may draw from it." *Boyde,* 404 F.3d at 1172 (citation and internal quotation marks omitted; emphasis in original).

Here, the trial court's admission of the evidence in issue did not render the trial so fundamentally unfair as to violate petitioner's due process rights. There were permissible inferences that the jury could draw from each such piece of evidence. The koala bear and NAMBLA bulletin recovered from petitioner's apartment were relevant to show intent by petitioner to engage in sexual acts with minor children. Similarly, under both state law and federal law, the jury could permissibly infer from James' testimony regarding the prior molestation that petitioner had the propensity to engage in sexual conduct with adolescent males. *See,* Cal. Evid.Code § 1108(a) ("In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352"); [11] Fed.R.Evid. 414 ("In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."); *see also United States v. LeMay,* 260 F.3d 1018, 1024–27 (9th Cir. 2001) (federal rule permitting admission of similar crimes in child molestation cases does not violate Due Process Clause; defendants have no fundamental right to a trial free from relevant propensity evidence that is not unduly prejudicial), *cert. denied,* 534 U.S. 1166, 122 S.Ct. 1181, 152 L.Ed.2d 124 (2002); *Windham,* 163 F.3d at 1103–04 (admission of "other acts" evidence will violate due process only where there are no permissible inferences the jury may draw from it). As there was a permissible inference the jury could draw from James' testimony, and as such testimony was not unduly prejudicial given the testimony of five other witnesses regard-

---

**11.** California Evidence Code section 1101 generally prohibits the admission of evidence of a person's character, including other specific instances of conduct, when offered to prove his or her conduct on a specified occasion. Such provision expressly notes, however, that evidence admissible under California Evidence Code section 1108, discussed above, is excepted from this prohibition. California Evidence Code section 352 provides that the court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will, among other things, create substantial danger of undue prejudice.

ing the charged molestations, no due process violation resulted from its admission.

■ Finally, even assuming the trial court constitutionally erred in admitting the foregoing evidence, petitioner is not entitled to habeas relief because the admission of such evidence did not have a "substantial and injurious effect on the jury's verdict." *See Plascencia v. Alameida,* 467 F.3d 1190, 1203 (9th Cir.2006) (applying *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) harmless error analysis to claim that admission of evidence was improper). The evidence against petitioner was strong. Five boys other than James testified as to separate but similar acts of molestation by petitioner. In light of that fact, there is simply no likelihood that the admission of one more witness testifying

regarding similar prior acts, or the admission of the sexualized koala bear and NAMBLA bulletin, had a substantial and injurious effect on the jury's verdict.

On this record, under any standard of review, petitioner's claim that the admission of the disputed evidence deprived petitioner of a fair trial and due process is without merit. Accordingly, petitioner is not entitled to habeas relief on such claims.

**B. Any Errors in the Trial Court's Jury Instructions Do Not Merit Habeas Relief**

Petitioner contends that the trial court erred in instructing the jury with CALJIC 2.50.01, 2.50.1, and 2.50.2, which petitioner claims confused the jury into applying a preponderance of the evidence standard for convicting petitioner of the charged crimes.[12] The Court of Appeal rejected

---

**12.** The trial court instructed the jury with CALJIC 2.50.01, as amended in 1999. (Lodged Doc. D at 11 n. 5). Specifically, the trial court instructed:

> Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense on one or more occasions other than that charged in this case. [¶] Sexual offense means a crime under the laws of a state or the United States that involves any of the following: [¶] One, any conduct made criminal by Penal Code Section 288(A). The elements of these crimes are set forth elsewhere in these instructions. [¶] Number two, contact without consent between any part of the defendant's body or an object and the genitals or anus of another person; [¶] Number three, contact without consent between the genitals or anus of the defendant and any part of another person's body. [¶] If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type of sexual offense. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crimes of which he is accused; however, if you find by a preponderance of the evidence that the defendant committed a prior sexual

offense or prior sexual offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. [¶] If you determine an inference properly can be drawn from this evidence, this inference is simply one for you to consider, along with all the other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime. Unless you are otherwise instructed, you must not consider this evidence for any other purpose.

(CT 382–83; RT 2823–25). The trial court also instructed the jury with CALJIC 2.50.1, as follows:

> Within the meaning of the preceding instruction [CALJIC 2.50.01], the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed crimes or sexual offenses other than those for which he is on trial. [¶] You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the crimes—the other crimes or sexual offenses. [¶] If you find other crimes were committed by a preponderance of the evidence, you are nevertheless cautioned and reminded that before a defendant can be found guilty of any crime charged or any included crime in this trial, the evidence as a whole must persuade you beyond a rea-

petitioner's assertions, noting that the jury instructions were correct statements of the law and that they contained a cautionary statement reminding the jury of the standard of proof for a conviction on the charged offenses. (Lodged Doc. D at 11–13).

### 1. Pertinent Law

 "Normally jury instructions in State trials are matters of State law." *Hallowell v. Keve*, 555 F.2d 103, 106 (3rd Cir.1977); *see also Williams v. Calderon*, 52 F.3d 1465, 1480–81 (9th Cir.1995), *cert. denied*, 516 U.S. 1124, 116 S.Ct. 937, 133 L.Ed.2d 863 (1996). Where it is determined there has been an instructional error, the error "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir.1988) (citation omitted). For a federal habeas petitioner challenging the validity of a state jury instruction, the issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72, 112 S.Ct. 475 (citation omitted); *Jeffries v. Blodgett*, 5 F.3d 1180, 1195 (9th Cir.1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994). Where, for example, a jury instruction relieves the prosecution of its burden in proving every element of the offense beyond a reasonable doubt, the jury instruction violates due process. *See Middleton v. McNeil*, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) ("In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." citing *Sand-*

*strom v. Montana*, 442 U.S. 510, 520–21, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). "[I]f a jury instruction is deemed 'ambiguous,' it will violate due process only when a reasonable likelihood exists that the jury has applied the challenged instruction in a manner that violates the Constitution." *Gibson v. Ortiz*, 387 F.3d 812, 820 (9th Cir.2004) (citing *Estelle*, 502 U.S. at 72, 112 S.Ct. 475).

### 2. Discussion

 In petitioner's case, the trial court properly instructed the jury on the elements of the crimes charged and on the proof beyond a reasonable doubt needed to convict petitioner. (CT 390, 392, 394–99, 404; RT 2829–38, 2941–42 (instructing the jury with CALJIC 2.90) (presumption of innocence/reasonable doubt/burden of proof), 10.45 (unlawful oral copulation with person under 16 years of age); 10.42.5 (lewd act with a child age 14 or 15); 10.41 (lewd act with a child under 14 years); 10.42.6 (continuous sexual abuse of a child); 10.44 (lewd act instruction—evidence of other offenses—other children); 17.24.1 (enhancement for committing a lewd act against more than one victim under age 14)). Petitioner does not dispute that these instructions included all the elements necessary to convict him. Rather, petitioner maintains the disputed instructions (CALJIC 2.50.01, 2.50.1 and 2.50.2) confused the jury into thinking it could find petitioner guilty of the charged offenses based on a preponderance of the evidence. This court disagrees.

---

sonable doubt that the defendant is guilty of that crime.

(CT 384; RT 2825). Finally the trial court defined "preponderance of the evidence," using CALJIC 2.50.2 as follows:

Preponderance of the evidence means evidence that has more convincing force than that opposed to it. If the evidence is so

evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who has the burden of proving it. [¶] You should consider all of the evidence bearing upon every issue regardless of who produced it.

(CT 385; RT 2826).

The disputed instructions properly informed the jury how it should view the evidence of the uncharged sex offense against James in determining petitioner's guilt and properly distinguished between the standards of proof to be used in determining whether petitioner had committed the prior acts versus the charged offenses. The instructions emphasized that, even if the jury believed petitioner committed the sex offense against James by a preponderance of the evidence, the jury still would have to find petitioner guilty beyond a reasonable doubt for the crimes charged. (CT 382–85; RT 2823–26). Petitioner's counsel also emphasized this fact in her closing argument. (RT 2751–52) (counsel quoting from the instructions: "If you find that preponderance of the evidence that the defendant committed the prior offense, it is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime. If you determine an inference properly can be drawn from this evidence, this evidence is simply one item for you to consider along with all of the other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charge.").

When read together, the instructions allowed the jury to find petitioner guilty of the crimes charged only if it believed that petitioner was guilty beyond a reasonable doubt.[13] The disputed instructions neither relieved the jury of finding an element of the offenses for which petitioner was charged, nor altered the State's burden of proof. Petitioner's speculation about juror confusion is insufficient to warrant relief on this claim. There is no reasonable likelihood that the jury applied the instructions in the manner petitioner suggests.

Petitioner's citation to *Gibson v. Ortiz*, 387 F.3d 812 (9th Cir.2004), is also unavailing. In *Gibson*, the Ninth Circuit found unconstitutional instructions that allowed a jury to find that a defendant had committed prior sexual offenses by a preponderance of the evidence and to infer therefrom that the defendant was guilty of the charged offense. *Gibson*, 387 F.3d at 822–23. Even though the jury in *Gibson* was also given the standard "beyond a reasonable doubt" instruction, the Ninth Circuit found that this did not prevent the possibility of the jury finding the defendant guilty of the present charges based only on the past offenses that had been established merely by a preponderance of the evidence. *Gibson*, 387 F.3d at 823.

This case is not like *Gibson* because the jury in this case was instructed with the revised 1999 version of CALJIC 2.50.01, which clarified how jurors are required to evaluate petitioner's guilt. Importantly, the revised 1999 instruction given at petitioner's trial, expressly told the jurors that a finding by a preponderance of the evidence that petitioner committed a prior sexual offense is not sufficient to prove the charged offenses beyond a reasonable doubt. The jury in *Gibson*, by contrast, was instructed with the 1996 version of CALJIC 2.50.01. *Gibson*, 387 F.3d at 822–25. Thus, unlike the jurors in *Gibson*, the jurors in petitioner's case were explicitly told they could not find petitioner guilty based solely on his prior offenses. The revised 1999 version of CALJIC 2.50.01 given during petitioner's trial correctly states that even if the jury found that petitioner committed a prior sexual offense by a preponderance of the evi-

---

**13.** *Francis v. Franklin,* 471 U.S. 307, 315, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (court must review challenged jury instruction in context to determine if the language reasonably could be understood as relieving the State of its burden of proof); *see also Estelle v. McGuire,* 502 U.S. at 72, 112 S.Ct. 475 ("'[T]he instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record.'") (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)).

dence, and drew the inference that he was likely to commit the crimes of which he was accused, that alone would not be sufficient to prove beyond a reasonable doubt that he committed the charged crimes. Not only did the instructions in issue distinguish between the standards of proof to be used in determining whether petitioner had committed the prior acts versus the charged offenses, the beyond a reasonable doubt standard was included in subsequent instructions. (CT 390, 401, 408); *see Mendez v. Knowles,* 556 F.3d 757, 770 (9th Cir.2009) (distinguishing *Gibson* in part because in *Gibson,* once the preponderance of the evidence standard was read to the jury, the beyond a reasonable doubt standard was not included in any subsequent instruction). There is no reasonable likelihood that the jury applied the challenged instructions to convict petitioner by a preponderance of the evidence or anything below proof beyond a reasonable doubt. *See, e.g., Aiyedogbon v. Evans,* 2008 WL 1809089 *9, n. 4 (N.D.Cal.2008) (revised version of CALJIC 2.50.01 did not lower burden of proof because it explicitly prohibited jurors from inferring guilt based on evidence of prior sex offenses proved not beyond a reasonable doubt but by the lower "preponderance of the evidence" standard, when it instructed jury that "if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the [charged] crime . . . ."); *Gutierrez v. Yates,* 2008 WL 4217865 **16–17 (C.D.Cal.2008) (same); *Wyrick v. Newland,* 2007 WL 760529 *8 (N.D.Cal.2007) (same).

 The state court's rejection of petitioner's jury instruction claim was not contrary to, and did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, petitioner is not entitled to federal habeas relief on this claim.

## C. Petitioner's Sentencing Claims Do Not Merit Habeas Relief

Petitioner contends that the sentencing court unconstitutionally sentenced petitioner to an upper term sentence and consecutive sentences based upon aggravating facts which were not found by a jury.[14] Petitioner presented this claim only to the California Supreme Court which rejected it on its merits. Based upon an independent review of the record, this court concludes that petitioner is not entitled to federal habeas relief on this claim.

### 1. Background

At the sentencing hearing, the trial court imposed the upper term of 16 years on Count 10 based upon a finding that the victim, Damian, was particularly vulnerable. (RT 3328). As noted above in Part II, the trial court imposed consecutive sentences on the remaining counts of conviction, resulting in a total sentence of 69 years to life in state prison. In imposing the consecutive sentences, the trial courted not that there were separate and distinct victims, that petitioner was a sophisticated sexual pedophile and a danger to others in the community, that petitioner's conduct was "atrocious" and that he had violated the boys' trust. (RT 3328–29).

---

**14.** To the extent respondent continues to maintain that petitioner's claim is unexhausted and prohibited by retroactivity principals, such contentions have been foreclosed by *Butler v. Curry,* 528 F.3d 624, 635, 639 (2008) (holding that *Cunningham* did not announce a new rule of law under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and a petitioner therefore is not obligated to return to state court to exhaust his remedies).

## 2. Pertinent Law

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held as a matter of constitutional law that, other than the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348.

In *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court held that the "statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531 (original emphasis).

On June 20, 2005—after the California Supreme Court denied petitioner's petition for review—the California Supreme Court issued its decision in *People v. Black*, 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 (2005) (*"Black I "*), *cert. granted and judgment vacated*, 549 U.S. 1190, 127 S.Ct. 1210, 167 L.Ed.2d 36, *on remand*, 41 Cal.4th 799, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (2007), *cert. denied*, —— U.S. ——, 128 S.Ct. 1063, 169 L.Ed.2d 813 (2008). In *Black I*, the court held that California's statutory scheme providing for the imposition of an upper term sentence did not violate the constitutional principles set forth in *Apprendi* and *Blakely*. The *Black I* court reasoned that the discretion afforded to a sentencing judge in choosing a lower, middle or upper term rendered the upper term under California law the "statutory maximum." *Black I*, 35 Cal.4th at 1257–61, 29 Cal.Rptr.3d 740, 113 P.3d 534.[15]

On January 22, 2007, the United States Supreme Court issued its decision in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). *Cunningham* held that a California judge's imposition of an upper term sentence based on facts found by the judge (other than the fact of a prior conviction) violated the constitutional principles set forth in *Apprendi* and *Blakely*. *Cunningham* expressly disapproved the holding and reasoning of *Black I*, finding that the middle term in California's determinate sentencing law was the relevant statutory maximum for purposes of applying *Blakely* and *Apprendi*. *Cunningham*, 127 S.Ct. at 870–71. In light of *Cunningham*, the Supreme Court vacated *Black I* and remanded the case to the California Supreme Court for further consideration. *Black v. California*, 549 U.S. 1190, 127 S.Ct. 1210, 167 L.Ed.2d 36 (2007). On remand, the California Supreme Court determined that so long as one of the aggravating factors upon which an upper term sentence is predicated has been established in a manner consistent with the Constitution, the upper term sentence is the "statutory max-

---

**15.** In *Black I,* the California Supreme Court also determined that the Sixth Amendment is not implicated by consecutive sentencing:

> The jury's verdict finding the defendant guilty of two or more crimes authorizes the statutory maximum sentence for each offense. When a judge considers the circumstances of each offense and the defendant's criminal history in determining whether the sentences are to be served concurrently or consecutively, he or she cannot be said to have usurped the jury's historical role. Permitting a judge to make any factual

> findings related to the choice between concurrent or consecutive sentences does not create an opportunity for legislatures to eliminate the right to a jury trial on elements of the offenses. Nothing in the high court's decisions in *Apprendi, Blakely,* or *[United States v.] Booker* [,] [543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)] suggests that they apply to factual determinations that do not serve as the "functional equivalent" of an element of a crime.

> 35 Cal.4th at 1263, 29 Cal.Rptr.3d 740, 113 P.3d 534.

**1070**

imum," and thus may constitutionally be imposed. *People v. Black*, 41 Cal.4th 799, 813–15, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (2007) (*Black II*), *cert. denied*, —— U.S. ——, 128 S.Ct. 1063, 169 L.Ed.2d 813 (2008).[16]

■■■ The Ninth Circuit has also affirmed that a single aggravating factor is sufficient to authorize an upper term sentence under California law. *See Butler v. Curry*, 528 F.3d 624, 641–42 (9th Cir.2008) (citing *Black II*, 41 Cal.4th at 812, 815, 62 Cal.Rptr.3d 569, 161 P.3d 1130). Therefore, if at least one of the aggravating factors on which a judge relies in sentencing a defendant to an upper term sentence is established in a manner consistent with the Sixth Amendment, the sentence does not violate the Constitution. *Butler*, 528 F.3d at 643.

■■■ Even if, however, none of the aggravating factors on which a judge relies in sentencing a defendant to an upper term sentence is established in a manner consistent with the Sixth Amendment, reversal would not be required if the error was harmless. *Washington v. Recuenco*, 548 U.S. 212, 221–22, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (sentencing errors subject to harmless error analysis); *see also Butler*, 528 F.3d at 648 (harmless error standard under *Brecht v. Abrahamson*,

507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), will prevent relief unless the error had a "substantial and injurious effect" on a defendant's sentence). To grant habeas relief in a case involving a constitutional error in the imposition of an upper term sentence, the court must have "grave doubt" as to whether a jury would have found the relevant aggravating factor beyond a reasonable doubt. *Butler*, 528 F.3d at 648. "Grave doubt" is unusual; it exists "when, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); *Butler*, 528 F.3d at 648.

### 3. Discussion

■■■ In this case, the trial court imposed an upper term sentence on Count 10 based on the fact that the victim, Damian, was particularly vulnerable. (RT 3328). Because the aggravating fact on which the sentencing court relied in imposing such upper term sentence was found by the court rather than by the jury, a constitutional error occurred. However, the error does not require reversal because it was harmless. Here, no "grave doubt" exists as to whether a jury would have found this aggravating factor beyond a reasonable doubt.

---

**16.** On remand, the California Supreme Court also noted that *Cunningham* did not "undermine [its] previous conclusion that imposition of consecutive terms under [California Penal Code] section 669 does not implicate a defendant's Sixth Amendment rights." *Black II*, 41 Cal.4th at 821, 62 Cal.Rptr.3d 569, 161 P.3d 1130. The *Black II* court explained:

In deciding whether to impose consecutive terms, the trial court may consider aggravating and mitigating factors, but there is no requirement that, in order to justify the imposition of consecutive terms, the trial court find that an aggravating circumstance exists. Factual findings are not required.

*Black II*, 41 Cal.4th at 822, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (citing Cal.Penal Code § 669 and Cal. R. Ct. 4.425(a) and (b)).

The United States Supreme Court also recently answered in the negative the question of whether the Sixth Amendment, as construed in *Apprendi*, and *Blakely*, requires that facts necessary to impose consecutive sentences be found by the jury or admitted by the defendant. *Oregon v. Ice*, —— U.S. ——, 128 S.Ct. 1657, 170 L.Ed.2d 353 (2008). On January 14, 2009, the Supreme Court held: "[T]he Sixth Amendment does not inhibit States from assigning to judges, rather than juries, the findings of facts necessary to the imposition of consecutive, rather than concurrent, sentences for multiple offenses." *Id.*

■ Under California law, "vulnerable means defenseless, unguarded, unprotected, *accessible,* assailable, one who is susceptible to the defendant's criminal act. A victim is 'particularly' vulnerable only if he is vulnerable to a special or unusual degree, to an extent greater than in other cases. A victim is thus not 'particularly' vulnerable where all victims of the crime of conviction are vulnerable in the same manner." *Butler,* 528 F.3d at 649 (internal citations omitted; emphasis added).[17]

In *Butler,* the Ninth Circuit was left with "grave doubt" as to whether a jury would have found beyond a reasonable doubt that the victim in that case was a "particularly vulnerable" victim of domestic violence based solely on the circumstance of being attacked from behind. *Butler,* 528 F.3d at 651. The court reasoned that it was the nature of domestic violence cases that all victims are vulnerable and there was no evidence to suggest that the victim's being attacked from behind made her more vulnerable than other domestic violence victims. *Id.* Here, unlike *Butler,* this court has little doubt based on the evidence adduced at trial that Damian was "particularly" vulnerable among those victims of continuous sexual abuse.

Damian was born on September 26, 1987. (RT 1227). Damian testified that he first met petitioner in 2000. (RT 1229, 1259–60). Damian was skateboarding in their neighborhood when petitioner approached Damian and invited him to come to petitioner's house to play on a skate ramp. (RT 1228, 2466). Damian said he eventually began going to petitioner's house weekly to play video games in petitioner's bedroom and to talk. (RT 1229–30, 1259–60, 1264). Petitioner befriended Damian, taking Damian to skateboard parks and to Seal Beach, and sponsoring Damian's soccer team. (RT 1234, 1236, 1239, 2467–68). Petitioner's employee and roommate testified that Damian was at petitioner's apartment "just about every day," sometimes two to three times per day, before and after school. (RT 2239–40).

Damian testified that petitioner was always touching him on his stomach and his back. (RT 1239). Damian told petitioner once that he did not like petitioner touching him, but did not tell him again because he thought petitioner understood that Damian did not like to be touched. (RT 1241). Damian said petitioner also touched him on his "private" (penis) with petitioner's hands eight to ten times in

**17.** That a jury would have found Damian was a "vulnerable" victim under California law is clear given the jury's finding regarding petitioner's access to Damian. The jury found petitioner guilty not only of one count of committing a lewd act upon a child for his acts against Damian (CT 432), the jury also found that petitioner was guilty of continuous sexual abuse of a child for his acts against Damian (Count 10) (CT 431). California Penal Code section 288.5(a) defines "continuous sexual abuse of a child" as occurring when a "person who ... *has recurring access to the child,* who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense." *See* Cal.Penal Code § 288.5(a). Thus, to find petitioner guilty of this offense, the jury had to find that petitioner had recurring access to Damian. *Id.* While "[a] fact that is an element of a crime upon which punishment is being imposed may not be used to impose an upper term" (Cal. R. Ct.4.420(d)), the issue here is whether Damian was "particularly vulnerable"—a finding that was not an element of Count 10. *Compare People v. Franklin,* 25 Cal.App.4th 328, 338, 30 Cal.Rptr.2d 376 (1994) (finding fact that defendant was in a position of trust and confidence with victim is an aggravating factor for continuous sexual abuse charges and is not an element of the crime).

2000 and 2001. (RT 1241–42, 1253). The touching began when Damian was lying on petitioner's bed alone with petitioner watching a movie. Petitioner "little by little" began touching Damian's penis with his hand and later with petitioner's mouth. (RT 1243–44). Damian took petitioner's hand off his penis. (RT 1244). Petitioner told Damian not to take the hand away but to relax. (RT 1244). Petitioner then orally copulated Damian until Damian ejaculated. (RT 1245). Damian put his pants on and went home. Damian said he felt bad. (RT 1245).

Damian testified that petitioner orally copulated Damian eight to ten times in 2000 and 2001, including a specific incident on September 7, 2001, when Damian was 13 years old. (RT 1246–47, 1249, 1253–56, 1264).[18] Damian testified that when petitioner did this Damian was nervous and fearful that petitioner would grab his penis again. (RT 1249). Damian did not scream or yell for help because petitioner told him to be quiet. (RT 1249–50). Damian said he did not want petitioner to do what petitioner did. (RT 1251, 1253). When the police detective interviewed Damian, Damian initially denied that petitioner had touched him inappropriately, but Damian said he did so because Damian was embarrassed to tell a woman what had happened. (RT 1267–69).

In light of the record, this court does not have "grave doubt" that, had the jury been presented with the question of whether Damian was a particularly vulnerable victim, the jury would have found that fact beyond a reasonable doubt. Petitioner approached and befriended Damian and gained Damian's trust, and then, as the trial court noted, violated that trust by sexually abusing Damian who by then was fearful and ashamed. *See, e.g., Mix. v.*

*Evans*, 2008 WL 4949013 *7 (C.D.Cal.2008) (federal habeas court confident that jury would have found beyond reasonable doubt that victim particularly vulnerable based on abuse of position of trust where victim viewed petitioner as somewhat of a family member and called him uncle); *Rich v. Martel*, 2008 WL 2788322 **10–11 (E.D.Cal.2008) (federal habeas court left with virtually no doubt that jury would have found beyond reasonable doubt that victim particularly vulnerable based upon abuse of trust where victim was sexually victimized by natural father, lived in his house, and was dependent upon him for physical and emotional well-being), *Report and Recommendation Adopted*, 2008 WL 3978294 (E.D.Cal.2008); *People v. Stitely*, 35 Cal.4th 514, 575, 26 Cal.Rptr.3d 1, 108 P.3d 182 (2005) (finding victim "particularly vulnerable" where victim was 16 year old, pregnant, dependent on the defendant for shelter and had no other place to go; noting "a crime victim can be deemed vulnerable in this context for reasons not based solely on age, including the victim's relationship with the defendant and his abuse of a position of trust"), *cert. denied*, 546 U.S. 865, 126 S.Ct. 164, 163 L.Ed.2d 151 (2005); *People v. Landaverde*, 157 Cal. App.4th 28, 34, 68 Cal.Rptr.3d 261 (2007) (finding any Sixth Amendment error in imposing upper term harmless where fact that abuse began when the victim was between six and seven years old, and the abuse was by her father who was involved in her life as her father, was sufficient to prove victim was particularly vulnerable); *People v. Burbine*, 106 Cal.App.4th 1250, 1262, 131 Cal.Rptr.2d 628 (2003) (finding defendant who accomplished continuous sexual abuse by "lull[ing] his victims into acquiescence and silence by cultivating a 'friendly neighbor' relationship with them

---

**18.** The defense investigator testified that Damian told her that petitioner had only two or three sexual encounters with petitioner. (RT 2118). Damian's mother was present when the investigator interviewed Damian. (RT 2120).

as distinct from the elements of the crime" engaged in "planning and sophistication" as an aggravating factor which made "offenses worse than they otherwise would have been by manipulating the children's natural feelings of gratitude and affection"). In these circumstances, the court finds that any error in failing to submit this fact to the jury is harmless.

▇▇▇ Finally, petitioner asserts that the trial court's imposition of consecutive sentences deprived him of his constitutional rights because the sentence was based on facts found by the sentencing court rather than those found by a jury.[19] As indicated in note 16, *supra*, the United States Supreme Court recently answered in the negative the question of whether the Sixth Amendment, as construed in *Apprendi*, and *Blakely*, requires that facts necessary to impose consecutive sentences be found by the jury or admitted by the defendant. *Oregon v. Ice*, — U.S. —, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). The Supreme Court held that the Sixth Amendment does not inhibit States from assigning to judges, rather than juries, the findings of facts necessary to the imposition of consecutive, rather than concurrent, sentences for multiple offenses. *Id.* As petitioner is not constitutionally entitled to have a jury find facts necessary to the imposition of a consecutive sentence, petitioner is not entitled to relief on this claim.

## VI. RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.[20]

DATED: April 8, 2009

▇▇▇▇▇▇

---

19. To the extent petitioner quarrels with the state courts' application and interpretation of California law regarding the imposition of consecutive sentences, his claim is not cognizable on federal habeas review. *See Rosier v. Giurbino*, 245 Fed.Appx. 687, 688 (9th Cir. 2007) (unpublished decision) (challenge to state court's decision to apply consecutive sentences not cognizable on federal habeas corpus) (citing 28 U.S.C. § 2254(a)). (The court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. *See* U.S.Ct.App. 9th Cir. Rule 36–3(b); Fed. R.App. P. 32.1(a)). *See also Butler v. Scribner*, 2008 WL 4542403 *9 (S.D.Cal. Oct. 2, 2008) (rejecting claim that trial court erred when it imposed consecutive sentences based on aggravating factors not proved to jury because decision whether to impose sentences concurrently or consecutively is matter of state criminal procedure and may not be reviewed by federal habeas court) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994), *cert. denied*, 514 U.S. 1026, 115 S.Ct. 1378, 131 L.Ed.2d 232 (1995)).

20. Petitioner's implicit request for an evidentiary hearing is denied. (Reply at 3) (petition-er alleging that he is entitled to an evidentiary hearing). An evidentiary hearing is not required in the present case. Petitioner has not alleged any material fact, undeveloped in the state court proceedings, which, if proved, would show petitioner's entitlement to habeas relief. *See Schriro v. Landrigan*, 550 U.S. 465, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (if record refutes applicant's factual allegations or otherwise precludes habeas relief, court not required to hold evidentiary hearing); *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir.2001) (assuming petitioner did not "fail to develop" his claim in the state court, petitioner "is entitled to an evidentiary hearing only if: (1) the allegations in his petition would, if proved, entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts.") (citations and emphasis omitted); *see also Gandarela v. Johnson*, 286 F.3d 1080, 1087 (9th Cir.2002), *cert. denied*, 537 U.S. 1117, 123 S.Ct. 882, 154 L.Ed.2d 795 (2003) (evidentiary hearing properly denied where the petitioner "failed to show what more an evidentiary hearing might reveal of material import . . . .").