# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LEWIS EDWARD LARSON, JR.,
       *Petitioner-Appellant,*

v.

JOAN PALMATEER,
       *Respondent-Appellee.*

No. 04-35465

D.C. No.
CV-00-01507-JJ

OPINION

Appeal from the United States District Court
for the District of Oregon
John Jelderks, Magistrate Judge, Presiding

Argued and Submitted
November 8, 2007—Portland, Oregon

Filed February 13, 2008

Before: Raymond C. Fisher and Marsha S. Berzon,
Circuit Judges, and Judith M. Barzilay, Judge.*

Opinion by Judge Fisher

---

*The Honorable Judith M. Barzilay, Judge, United States Court of
International Trade, sitting by designation.

1339

## COUNSEL

Lewis E. Larson, pro se; Nell I. Brown (argued), Assistant Federal Public Defender, Portland, Oregon, for the petitioner-appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, Kaye E. McDonald (argued), Senior Assistant Attorney General, Office of the Oregon Attorney General, Salem, Oregon, for the respondent-appellee.

## OPINION

FISHER, Circuit Judge:

Lewis Larson, Jr. appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. His claims on habeas are that his Fifth Amendment due process rights were violated when the trial court judge required him to wear a security leg brace before the jury, denied his motion to exclude witnesses from the courtroom, allowed the admission of evidence relating to his past criminal history and exhibited judicial bias. He also claims that his Sixth Amendment right to counsel was violated when the trial court judge refused to appoint him substitute counsel. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

## BACKGROUND

Larson was convicted in Oregon state court in 1992 for two counts of aggravated murder in the deaths of his father, Lewis Larson, Sr., and his stepbrother, Darin Larson. Both victims

were last seen alive in January 1990. Bloody items from their house were found in a nearby canyon several days after they disappeared; their bodies, wrapped in plastic and a blanket, were ultimately discovered 10 months later by a hunter. Both victims appeared to have been killed by blunt force trauma to the head. The state argued that Larson's motive for the crime was that he was angry at his father and stepbrother because he believed they had turned him in to the police a month earlier on account of a parole violation. The state presented evidence that Larson had acted suspiciously in the days following his relatives' disappearance, including that he sold some of the victims' belongings and told the police several variations on a story that his father and stepbrother had suddenly gone to Reno to collect an inheritance from a recently deceased relative.

Larson represented himself, with the assistance of a court-appointed legal advisor, throughout his six-day trial. After deliberating less than three hours, the jury convicted Larson on both counts and sentenced him to life in prison without the possibility of parole. On direct appeal, both the Oregon Court of Appeals and Oregon Supreme Court affirmed his conviction. Although both courts held, under state law, that the trial court had improperly denied Larson's motion to exclude witnesses from the courtroom, both courts also concluded that this error was harmless. Larson filed a petition for post-conviction relief before the Oregon courts in which he raised numerous claims for relief under federal and state law, all of which were denied. The Oregon Court of Appeals summarily affirmed, and the Oregon Supreme Court denied review. Larson then filed the instant federal petition for habeas corpus under 28 U.S.C. § 2254, which the district court denied.

A district court's denial of a habeas corpus petition is reviewed de novo. *Leavitt v. Arave*, 383 F.3d 809, 815 (9th Cir. 2004) (per curiam). Because Larson's petition was filed after April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies. *See Lindh v. Murphy*, 521

U.S. 320, 327 (1997). Under AEDPA, a federal court is permitted to grant habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). To prevail, the petitioner must demonstrate "that the state court's application of Supreme Court precedent to the facts of his case was not only incorrect but 'objectively unreasonable.' " *Davis v. Woodford*, 384 F.3d 628, 637-38 (9th Cir. 2004) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)). If the state court reaches the merits without providing reasoning for us to review, however, "we independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." *Brazzel v. Washington*, 491 F.3d 976, 981 (9th Cir. 2007) (internal quotation marks omitted).

## I.

Larson claims that his due process rights were violated when the trial court compelled him to wear a security leg brace in front of the jury during two of his six days of trial. Although at a pretrial hearing the trial court described the security brace as an "unobtrusive" device that would be worn under Larson's clothing, Larson contends that the device was too bulky to fit under his pants leg and was thus worn over his clothing. The trial record does not indicate how the brace was worn, but on the beginning of the third day of trial, the judge ordered the leg brace removed and made the following comments to the jury:

> Mr. Larson has been wearing a leg brace, and that leg brace was strictly a security device. It's a kind of leg iron that they use to transport prisoners, basically during airline flights, that sort of thing. A decision has been made to take it off of him. He has a physical impairment, so that's the reason for the absence

> of the brace. You saw it, now you don't see it. That's why.

There is no evidence in the record suggesting that Larson asked the trial court to comment on the removal of the leg brace, and the trial court judge did not give any limiting instruction to the jury.

**[1]** Visible shackling of a criminal defendant during trial "undermines the presumption of innocence and the related fairness of the factfinding process" and " 'affront[s]' the 'dignity and decorum of judicial proceedings that the judge is seeking to uphold.' " *Deck v. Missouri*, 544 U.S. 622, 630-31 (2005) (alteration in original) (quoting *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). The Supreme Court has therefore held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id.* at 629. The Court described this principle as one that is "deeply embedded in the law," reflecting a consensus "dating back to the 19th century." *Id.* Visible restraints are therefore not permitted unless the trial court finds that they are necessary while "tak[ing] account of the circumstances of the particular case." *Id.* at 632.

**[2]** Although the state argues that the record does not prove that Larson in fact wore the leg brace over his clothing, the trial court's comments to the jury upon the removal of the leg brace — "You saw it; now you don't see it" — strongly indicate that the leg brace was visible to the members of the jury. Because the record makes clear that Larson moved about the courtroom during the period he was wearing the brace, it is particularly likely that the jury was aware that he was wearing the security device. Further, even if the state were correct that Larson wore the device under his pants leg, the trial court's comments to the jury served to inform the jury that Larson wore the leg brace, that it is "strictly a security device" and

that "it's a kind of leg iron that they use to transport prisoners." Regardless of how the brace was worn, therefore, the judge's comments ensured that it was undoubtedly "visible" to the jury in a way that would affect Larson's due process rights.

**[3]** Even visible restraints, however, do not violate the defendant's due process rights if their use is " 'justified by an essential state interest' — such as the interest in courtroom security — specific to the defendant on trial." *Deck*, 544 U.S. at 624 (quoting *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986)). The record contains only one possible justification for restraining Larson, in comments the trial court made during a pre-trial hearing held nine months before trial. In response to Larson's complaints about being made to argue his pre-trial motion in shackles, the judge remarked that the shackles were necessary because the courtroom was "understaffed" and that there was "only one deputy, and of course, he's outside. That's the reason for it." The trial judge specifically noted, however, that "You're certainly not going to be shackled at any time a jury is around. . . . It's just these hearings that are being conducted prior to trial." Because the trial court judge specifically rejected the idea of shackling Larson in front of the jury, it is difficult to construe his comments as a finding that visible restraints during trial were necessary. Further, there is no indication that these same security constraints — namely, that only one deputy was available — were also in place during trial. Lastly, even if the courtroom remained understaffed during trial, the trial court judge's reference to a staff shortage fails to provide the individualized determination of necessity required by the Supreme Court in *Deck*. *See* 544 U.S. at 624.

**[4]** Although the district court acknowledged that the trial judge made "no formalized finding" as to the necessity of restraints, it nonetheless rejected Larson's due process claim, holding that the trial court was presented with security concerns that necessitated the use of restraints. Specifically, the

district court suggested that the security leg brace may have been justified because Larson had a proclivity for absconding, called prisoners as witnesses and was on trial for a particularly vicious retaliation murder against family members. Although any of these reasons may have provided an adequate basis for imposing security restraints, the Supreme Court in *Deck* specifically rejected such post-hoc rationales. *See* 544 U.S. at 634-35 (noting that one suggested justification for shackling the defendant "founders on the record's failure to indicate that the trial judge saw the matter as one calling for discretion," because "[t]he record contains no formal or informal findings"); *see also Wilson v. McCarthy*, 770 F.2d 1482, 1485 (9th Cir. 1985) (noting that trial court "held a hearing and stated for the record his reasons" for requiring shackling); *United States v. Baker*, 432 F.3d 1189, 1244 (11th Cir. 2005) ("[I]f a judge intends to shackle a defendant, he must make a case specific and individualized assessment of each defendant in that particular trial."); *Lakin v. Stine*, 431 F.3d 959, 965 (6th Cir. 2005) (noting that *Deck* requires an "individualized determination" and that the trial court must make "reasoned findings on the record"). Although the Supreme Court left open the possibility that there may be an "exceptional case where the record itself makes clear that there are indisputably good reasons for shackling," this is not such a case. *See Deck*, 544 U.S. at 635. We therefore agree with Larson that his due process rights were violated when the trial court failed to make a finding on the record justifying the necessity of physical restraints, and that the absence of such a finding cannot be cured by the reviewing court's after-the-fact justifications.

Even if the trial court's imposition of physical restraints violated Larson's right to due process, however, we must nonetheless assess whether this error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation marks omitted); *Rhoden v. Rowland*, 172 F.3d 633, 637 (9th Cir. 1999); *see also Fry v. Pliler*, 127 S. Ct.

2321, 2328 (2007) (holding that *Brecht* harmless error review applies whether or not the state court recognized the error and reviewed it for harmlessness). Review for harmless error under *Brecht* is "more forgiving" to state court errors than the harmless error standard the Supreme Court applies on its direct review of state court convictions. *See Fry*, 127 S. Ct. at 2325 (contrasting *Brecht* with *Chapman*'s "harmless beyond a reasonable doubt" standard). Even under *Brecht*, however, "in cases of grave doubt as to harmlessness the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995).

**[5]** To determine whether the imposition of physical restraints constitutes prejudicial error, we have considered the appearance and visibility of the restraining device, the nature of the crime with which the defendant was charged and the strength of the state's evidence against the defendant. *See Dyas v. Poole*, 317 F.3d 934, 937 (9th Cir. 2003) (per curiam). "[T]he greater the intensity of shackling . . . the greater the extent of prejudice," because elaborate physical restraints are more likely to create the appearance of the defendant's dangerousness. *See Spain v. Rushen*, 883 F.2d 712, 722 (9th Cir. 1989). Hence, physical restraints such as a waist chain, leg irons or handcuffs may create a more prejudicial appearance than more unobtrusive forms of restraint. *See id*. Similarly, if the defendant is charged with a violent crime, then the risk of prejudice increases, because shackling "essentially brand[s] [him] as having a violent nature." *Rhoden*, 172 F.3d at 637. Concerns about prejudice may be mitigated, however, if the state's evidence against the defendant was "overwhelming." *See Dyas*, 317 F.3d at 937.

**[6]** Larson was compelled to wear a security leg brace for two of his six days of trial. The record contains no indication, and Larson does not suggest, that the brace prevented him from moving about the courtroom as he presented his case pro se. Although the trial court's characterization of the leg brace as "a kind of leg iron" might have been better phrased, undoubtedly a security leg brace is not as visually obtrusive

or prejudicial a restraining device as handcuffs, leg irons, waist chains or gags. *See Spain*, 883 F.2d at 722. Further, that Larson was allowed to move about the courtroom unencumbered for four of his six days of trial mitigated the prejudicial impact of the trial court's decision to use the leg brace. The jury would likely have interpreted the judge's decision to remove the leg brace — and Larson's subsequent good behavior — as evidence that Larson was not a dangerous individual in need of constant restraint, particularly when Larson was actively in front of the judge and jury while performing as his own lawyer.

**[7]** Although we are troubled by the trial court's imposition of a visible security restraint without making a finding of necessity on the record, we conclude that Larson has not shown that wearing the leg brace for the first two days of his six-day trial had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 623. Therefore, we affirm the district court.

## II.

Larson further argues that the trial court violated his right to due process when it denied his motion to exclude the state's witnesses during trial. The purpose of witness exclusion is "to prevent witnesses from 'tailoring' their testimony to that of earlier witnesses and to aid in detecting testimony that is less than candid." *United States v. Ell*, 718 F.2d 291, 293 (9th Cir. 1983). Larson moved to have the state's witnesses excluded from the trial after the prosecutor had begun to present the state's case-in-chief; the trial court denied the motion as untimely. On direct appeal, the Oregon Supreme Court held that the trial judge had ruled improperly as a matter of state law, but determined that Larson had not shown prejudice:

> The record does not contain any indication that we can find (and defendant does not suggest) that any

> witness tailored testimony to conform with that of any earlier witness or even communicated with any earlier witness about questions by trial counsel, about trial testimony, or about the facts of the case. Indeed, because of the nature of the proof, even the *possibility* of such tailoring was very remote.

*State v. Larson*, 933 P.2d 958, 965 (Or. 1997).

**[8]** The correctness of the trial court's evidentiary ruling as a matter of state law is irrelevant to our review, because a federal court may entertain an application for a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The only question before us, therefore, is whether the trial court's failure to exclude the state's witnesses from the courtroom "rendered the trial so fundamentally unfair as to violate due process." *See Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998).

**[9]** Neither this court nor the Supreme Court has ever held that the failure to exclude witnesses can violate due process. Under common law, the decision to exclude witnesses was left to the discretion of the trial court. *See Holder v. United States*, 150 U.S. 91, 92 (1893) (noting that the trial court had discretion to exclude the testimony of a witness who had not obeyed an exclusion order). Although the Federal Rules of Evidence now require a federal district court to exclude witnesses upon the motion of a party, there is no indication that this rule has a constitutional basis. *See* Fed. R. Evid. 615; *see also* 29 Wright & Miller, Federal Practice & Procedure § 6241 ("Rule 615 departs from the common law in that, when a party requests exclusion of witnesses, such an order is mandatory rather than a matter of discretion."). We need not decide, however, whether a state trial court's failure to exclude witnesses may ever render a trial fundamentally unfair, because there is no evidence that the trial judge's refusal to sequester witnesses adversely affected Larson's

trial. As the Oregon Supreme Court concluded, the record does not suggest that the state's witnesses tailored their testimony to corroborate the testimony of other witnesses. *See Larson*, 933 P.2d at 965. Moreover, the vast majority of the state's 42 witnesses testified about discrete events that presented little risk of tailoring. Accordingly, Larson's witness exclusion claim fails.

## III.

Larson next argues that his due process rights were violated when the trial court allowed the state to present evidence that Larson had committed prior crimes.[1] The state's theory of Larson's motive for the crimes was that Larson was angry at his father and stepbrother because he believed that they had turned him in to the police on account of a parole violation. Accordingly, the prosecutor referred to Larson's status as a parolee during opening argument and called numerous witnesses who testified to aspects of Larson's criminal past. Larson moved for a mistrial on the third day of trial on the basis of these references to his criminal history, but the trial court denied his motion.

**[10]** Our review of evidentiary rulings is confined to "determining whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process." *Windham*, 163 F.3d at 1103. The Supreme Court has expressly reserved the question of whether using evidence of the defen-

---

[1] The state argues that Larson procedurally defaulted this claim by failing to move for a mistrial on a timely basis. The state court, however, affirmed Larson's conviction on the merits instead of relying on the procedural bar. If an issue is presented to the state courts, procedural default will not preclude federal review unless the state court invokes a procedural bar as an independent basis for its disposition of the case. *See Harris v. Reed*, 489 U.S. 255, 261-62 (1989). To the extent the state also argues that this claim was not exhausted, we may deny a claim on the merits notwithstanding the petitioner's failure to exhaust the remedies available in state court. *See* 28 U.S.C. § 2254(b)(2).

dant's past crimes to show that he has a propensity for criminal activity could ever violate due process. *See Estelle v. McGuire,* 502 U.S. 62, 75 n.5 (1991). Because the Court has "expressly left this issue an 'open question,' " the state court did not unreasonably apply clearly established federal law in determining that the admission of evidence of Larson's criminal history did not violate due process. *See Alberni v. McDaniel*, 458 F.3d 860, 866 (9th Cir. 2006); *see also* 28 U.S.C. § 2254(d)(1).

## IV.

Larson claims that his Sixth Amendment right to counsel was violated when the trial court refused to relieve Larson's third set of counsel, thereby prompting Larson to represent himself. Larson had asked the trial court to relieve his first counsel because he believed counsel was unprepared. He then asked the court to relieve his second counsel, arguing that his second counsel was unwilling to work diligently on his behalf. Although the trial court judge believed that Larson's second counsel was representing him in "excellent fashion," he agreed to appoint Larson a third set of substitute counsel because Larson's working relationship with his second counsel had broken down. At the time the judge granted this motion, however, he warned Larson that "this would probably be the end of the road" as far as further requests for new counsel were concerned. Nonetheless, Larson requested a fourth set of counsel nine months later, on the eve of trial. After hearing Larson's complaints, the trial court denied Larson's motion and Larson opted to represent himself with his third counsel as stand-by.

**[11]** The Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983); *see Plumlee v. Masto*, No. 04-15101, slip op. at 650-51 (9th Cir. Jan. 17, 2008) (en banc). Larson did not argue that his third set of counsel had either an actual or apparent conflict of interest. Instead, he

complained solely about his counsel's strategic decisions and lack of communication with him, including that his counsel did not make motions that he requested, contacted witnesses without his consent and did not present him the list of defense witnesses for his approval. However, no Supreme Court case has held that "the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust." *Plumlee*, slip op. at 661. Because Larson has not shown that he was entitled to a fourth set of counsel under clearly established federal law, his Sixth Amendment claim fails.

V.

Lastly, Larson claims that his due process right to a fair trial was violated because the trial court judge was biased. Larson argues that the trial court judge exhibited bias by ruling against a number of his motions and at times expressing impatience with Larson as he proceeded pro se. The Oregon state court denied this claim in Larson's petition for collateral review, finding that Larson had not presented any evidence that the judge "made any gestures or facial expressions that would exhibit a bias against [him]." The Oregon court held that the trial court therefore did not violate his due process rights.

[12] The Supreme Court has long established that the Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. *See In re Murchison*, 349 U.S. 133, 136 (1955). To succeed on a judicial bias claim, however, the petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). In the absence of any evidence of some extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are "critical or disapproving of, or even hostile to,

counsel, the parties, or their cases." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see United States v. Martin*, 278 F.3d 988, 1005 (9th Cir. 2002). Because Larson has provided no evidence of the trial court's alleged bias outside of these rulings and remarks — which themselves revealed little more than the occasional mild frustration with Larson's pro se lawyering skills — his claim that he was denied a fair trial also fails.

**AFFIRMED.**