GOULD, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s holding that the state court reasonably concluded that a jury would not have acquitted Walker if counsel for Walker had with success objected to the shackle. We presume that juries follow instructions that are given, see Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000), and here, even if the evidence had been presented without Walker shackled, I cannot see any likelihood that a responsible jury would have acquitted Walker. The evidence of his role in perpetrating armed robberies, with a philosophy to leave no witnesses, a murder, several attempted murders, and a serious sexual and physical assault on a young woman was just too strong to think that he was convicted because he was shackled.
But I depart from the majority’s holding that the California Supreme Court reasonably decided that counsel’s deficiency did not prejudice Walker in the penalty phase. The reason here too rests on the premise that juries follow the instructions given them. See id. In the penalty phase, the jury was instructed that it could implement the mercy of life imprisonment rather than death based on mitigating evidence. Walker’s murder and his assaults were cruel and atrocious, but he had going for him in mitigation that he was only a teenager when the crimes were committed, had a clean record before then, and was good to his mother and sister. There is no way to know how a jury would have weighed such factors once told it had the power to permit or to preclude a death sentence, absent shackling that weighed on the jurors’ sensibilities. Stated another way, if counsel had competently fulfilled his duty to have his client unshackled when under the gaze of the jury, I have grave doubt about whether Walker still would have been sentenced to death. Because the jury’s role is relatively unconstrained in deciding whether to opt for mercy and life rather than the most extreme punishment of death, we cannot say that the shackling error of counsel did not cause prejudice to Walker.
The Supreme Court treats death differently by requiring courts to take a closer look at capital cases even where deference is generally given to trial-court decisions. Since reinstating the death penalty in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the Supreme Court has required the administration of capital cases to comply with due-process requirements and with many special rules, see, e.g., Eddings v. Oklahoma, 455 U.S. 104, 114-15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (requiring a sentencer to consider and give some weight to every piece of mitigating evidence); Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (requiring courts to introduce any mitigating evidence that a defendant wants in the penalty phase); Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (finding a stat *946 ute imposing a mandatory death sentence for certain crimes unconstitutional and stating that courts must be very cautious in performing proportionality review in capital cases because “[d]eath, in its finality differs more from life imprisonment than a 100-year prison term differs from one of only a year or two”); Gregg, 428 U.S. at 191-95, 96 S.Ct. 2909 (holding that a sentencer must weigh aggravating factors against mitigating factors to ensure proportionality between the crime and the punishment).
The Court has also carved out groups of defendants who cannot constitutionally receive the death penalty. See Roper v. Simmons, 543 U.S. 551, 574, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (juveniles); Atkins v. Virginia, 536 U.S. 304, 320, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (mentally deficient); Tison v. Arizona, 481 U.S. 137, 158, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) (nontriggermen involved in felonies resulting in murder absent intent to kill or reckless indifference); Enmund v. Florida, 458 U.S. 782, 801, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (same); Coker v. Georgia, 433 U.S. 584, 598-99, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (rapists who do not kill anyone). These rules reinforce that “death is different” and reflect the Supreme Court’s aim to ensure that death is not dolled out to the undeserving. See Furman v. Georgia, 408 U.S. 238, 306, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring) (“The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation.... And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity.”); see also Nancy J. King & Joseph L. Hoffmann, Habeas for the Twenty-First Century 127 (2011).
These death-penalty-specific rules are exceptions to the Supreme Court’s general principle that we take a deferential approach when evaluating a sentence imposed by a state court. See, e.g., Ewing v. California, 588 U.S. 11, 17-18, 29-30, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (noting that a high degree of deference must be given to the policy judgments of the state in performing proportionality review and upholding the imposition of a potential life sentence for stealing three golf clubs under California’s three strikes law); Harmelin v. Michigan, 501 U.S. 957, 995-96, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (upholding a statute that imposed a mandatory life sentence without parole for simple possession of more than 650 grams of cocaine); Hutto v. Davis, 454 U.S. 370, 370-71, 374 & n. 3, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam) (upholding a forty-year prison sentence for possession with intent to distribute nine ounces of marijuana); Rummel v. Estelle, 445 U.S. 263, 266, 285, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (refusing to strike down a mandatory sentence of life imprisonment under the Texas recidivist statute for obtaining $120.75 by false pretenses).
A defendant demonstrates a claim of constitutionally ineffective assistance of counsel when: (1) counsel’s efforts in defense are “outside the wide range of professionally competent assistance^]” and (2) the defendant thereby suffers prejudice. Strickland v. Washington, 466 U.S. 668, 690-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Warden Martel did not appeal the district court’s finding that the state court unreasonably determined that Walker’s attorney performed satisfactorily. See Walker v. Martel, 803 F.Supp.2d 1032, 1046-1049 (N.D.Cal.2011) (“Given the clearly established federal law and the undisputed facts in this case, this court must conclude that the state court’s summary decision that there was no deficient per *947 formance is objectively unreasonable.”). This is understandable. The state trial court made no findings on need for shackling, which were beyond doubt required by federal law. Notwithstanding the absence of any findings justifying shackling, Walker’s lawyer did not object to the shackling, though any competent lawyer paying attention to it would have done so. We therefore accept that the attorney’s performance was deficient, leaving us to consider whether the state court was unreasonable in determining that counsel’s unprofessional performance did not prejudice Walker. Prejudice is established when a challenger demonstrates that there is a reasonable probability that, “but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Premo v. Moore, — U.S. -, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010)); see also Strickland, 466 U.S. at 694, 104 S.Ct. 2052. This issue poses the crux of this appeal.
An assumption of prejudice does not automatically spring from counsel’s deficiency because failure to object to shackling does not fall within the three categories on which prejudice is presumed. Smith v. Robbins, 528 U.S. 259, 287, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (stating that a denial of counsel, state interference with counsel’s assistance, and an actual conflict of interest are the only errors that lead to presumed prejudice in the ineffective assistance of counsel context). But because prejudice is not presumed does not mean that it is absent. The majority cites to Premo v. Moore to support its decision to dismiss the Court’s holding in Deck v. Missouri, 544 U.S. 622, 635, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) (holding that “where a court, without adequate justification orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice”). But Moore involved a challenge to a conviction and not a death sentence. 131 S.Ct. at 737-39. And Moore only held that the cases in which due-process claims are directly raised, as opposed to cases in which due-process problems are challenged through the lens of ineffective assistance of counsel, cannot establish per se rules of prejudice in the Strickland context. Id. at 744-45. Nowhere did Moore suggest that Deck and cases like it should be rendered irrelevant. Due-process cases discussing the degree of prejudice resulting from an underlying error that is the consequence of an attorney’s deficiency are persuasive because they help us assess an error’s significance. See Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 453-55, 175 L.Ed.2d 398 (2009) (per curiam) (granting habeas relief from a death sentence on AEDPA review of a Strickland ineffective assistance of counsel claim based on counsel’s failure to introduce mitigating evidence and citing several non-Strickland cases in support of a prejudice finding).
Deck and the other shackling cases suggest that error resulting in a defendant’s visible restraint is serious when shackling is known to the jury. Deck, 544 U.S. at 633, 125 S.Ct. 2007 (“The appearance of the offender during the penalty phase in shackles ... almost inevitably implies to a jury, as a matter of common sense, that court authorities consider the offender a danger to the community — often a statutory aggravator and nearly always a relevant factor in jury decisionmaking.... It also almost inevitably affects adversely the jury’s perception of the character of the defendant.”); Holbrook v. Flynn, 475 U.S. 560, 570, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (“Whenever a courtroom arrangement is challenged as inherently prejudicial ... the question must be not whether *948 jurors actually articulated a consciousness of some prejudicial effect, but rather whether an unacceptable risk is presented of impermissible factors coming into play.” (internal quotation marks omitted)); Illinois v. Allen, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (“[N]o person should be tried while shackled and gagged except as a last resort.”); Larson v. Palmateer, 515 F.3d 1057, 1064 (9th Cir.2008) (“[Pjhysical restraints such as a waist chain, leg irons or handcuffs may create a more prejudicial appearance than more unobtrusive forms of restraint.”); Spain v. Rushen, 883 F.2d 712, 722 (9th Cir.1989) (“[T]he greater the intensity of shackling and the chains’ visibility to the jurors, the greater the extent of prejudice.”). We can conclude from these cases that although obtrusive shackling intensifies the degree of prejudice, even minor shackling may result in prejudice. See Roche v. Davis, 291 F.3d 473, 482-83 (7th Cir.2002) (noting that “the sight of a defendant in shackles ‘could instill in the jury a belief that the defendant is a dangerous individual who cannot be controlled, an idea that could be devastating to his defense.’ ” (quoting Harrell v. Israel, 672 F.2d 632, 637 (7th Cir.1982))).
In deciding that the state court was reasonable in finding that Walker was not prejudiced in either the guilt or penalty phase, the majority relies on three primary points: that the shackle itself was unobtrusive and nonprejudicial; that the trial judge dispelled the impression that Walker was a threat; and that the evidence against Walker was strong. I agree with the third point and conclude that it justifies the California Supreme Court’s finding as to Walker’s guilt. But I part company with the majority as to the penalty phase, concluding that the majority minimizes the prejudicial effect of the shackle and maximizes the ameliorative power of the judge’s instructions, and tolerates shackling absent justifications in a penalty-phase context where shackling is inherently unfair to a defendant’s legitimate prospect that a jury will show mercy and favor life over death.
The jury in this case was considering the fate of young adult who was only a teenager when he committed the crimes; a teenager with no prior criminal record, who grew up poor and gave financial and emotional support to his mother and sisters. People v. Walker, 47 Cal.3d 605, 253 Cal.Rptr. 863, 765 P.2d 70, 87-88 (1988). The jury was contemplating whether to extinguish the life of a young man who was loved by his family, whatever the horror of the crimes he committed against others. Id. I have grave doubt whether the shackle diminished these mitigating facts and intensified aggravating factors such as the dangerousness of Walker.
Jurors were aware of the shackle when Walker approached the witness stand to testify as it prevented Walker from walking “normally.” Despite being underneath Walker’s pant leg, some jurors also saw the leg brace (or other forms of restraints that Walker periodically wore, such as handcuffs and a waist chain) apart from when Walker approached the witness stand. One juror testified that she assumed Walker’s movement was confined “because of what he was being held for” and said that “the shackles seemed like a short lead on a vicious dog.” The prosecutor drew attention to the shackle in recross examination of Walker’s girlfriend during the guilt phase. On one occasion, the bailiff “jump[ed] up behind [Walker] and subsequently handcuff[ed] him within view of the jury” after Walker adjusted the brace. The jury “looked scared as a result.” Because of these facts I do not share the majority’s opinion that the shackle was not obtrusive and prejudicial.
*949 Although the majority states that “the judge indicated to the jury that the brace was a more-or-less routine measure taken by the sheriff for all persons in custody,” I do not give much weight to the statement’s ameliorative effect. We presume that jurors carefully follow instructions. See Francis v. Franklin, 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); see also Weeks, 528 U.S. at 234, 120 S.Ct. 727. But the judge’s explanation about the shackle was not phrased as an instruction to guide the jury, and should not be viewed by us as an instruction to be followed.
The judge did not specifically tell the jury how to perceive the shackle. Instead, the judge merely interrupted the testimony of Ms. Jackson, who had brought up the brace while being questioned by the prosecutor. The judge then asked, “You’re talking about the knee restraint that the Sheriff puts on persons who are in custody? Is that what you are referring to?” This passing statement is not the same as explicit instructions given in cases where courts have found that a judge’s statements cured the general prejudice of shackles. See Woods v. Thieret, 5 F.3d 244, 249 (7th Cir.1993) (where the judge “went even further [than removing the jury while inmates were escorted wearing shackles to the witness stand] and gave a curative instruction advising the jury to disregard the restraints when assessing the testimony”); Holloway v. Alexander, 957 F.2d 529, 530 (8th Cir.1992) (where the judge “admonished the jury to disregard the shackles in their consideration of [defendant’s] case”). Reasonable jurors would not have considered the judge’s remark a directive, so we cannot presume that it had a curative effect. The comment by the judge also does not suggest that all persons in custody, both violent and nonviolent, wear the shackle.
We cannot be absolutely certain how the presentation of an unshackled Walker would have affected the possibility that a jury would have shown mercy. But certainty is not required. Prejudice is shown where there is a reasonable probability that the outcome would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Where, as here, a unanimous sentence is required, there need only be a reasonable probability that “at least one juror could reasonably have determined that ... death was not an appropriate sentence.” Neal v. Puckett, 239 F.3d 683, 691-92 (5th Cir.2001) (footnote omitted); see also Cal.Penal Code § 190.4(b) (imposing the death penalty must be a unanimous decision by the jury).
The majority correctly states that Walker bears the burden of proving that he was prejudiced by his attorney’s error such that “there was no reasonable basis for the state court to deny relief.” See Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 784, 787, 178 L.Ed.2d 624 (2011). But I do not see how we can reasonably let the death penalty stand against Walker when the question of whether the jury would have extended mercy is so inherently unknowable with certainty. See Murtishaw v. Woodford, 255 F.3d 926, 974 (9th Cir.2001) (noting that “[b]ecause [the court] cannot actually determine whether the jury would have exercised leniency, [it] cannot determine, one way or another, whether the failure to give the jury that option resulted in ‘actual prejudice’ to [the defendant]” but reversing and remanding a death sentence due to “ ‘grave doubt’ about whether the jury would have returned a death sentence”). It is sufficient that we have grave doubts on the propriety of the penalty because it is reasonably probable that the jury might have shown mercy absent shackling.
*950 In considering a similar habeas capital case where a defendant was placed in leg cuffs during both the guilt and penalty phases of trial, the Seventh Circuit in Roche v. Davis found that the risk of prejudice from being unjustly shackled is high and granted relief on the offender’s death sentence after finding that aggravating circumstances barely outweighed the mitigating circumstances in the penalty phase.[1] 291 F.3d at 484-85. The Seventh Circuit noted that the “extreme inherent prejudice associated with shackling ... and the considerable mitigating evidence” established a “ ‘reasonable probability’ that but for his counsel’s deficient performance, the result of [Roche’s] sentencing hearing would have been different.” Id. ■ at 484 (citations omitted). The court concluded that the state court’s failure to find prejudice was inconsistent with Strickland. See id.
We must consider whether the jury would have spared Walker had he not been shackled. In light of the mitigating evidence presented by Walker, I conclude that there is a real probability that absent the shackle’s presence, at least one juror would have concluded that Walker should not be put to death for his crimes committed when a teenager.
In Walker’s case, the death penalty was not a certainty. In the penalty phase alone it took the jury about 10.5 hours over the course of three days to reach their decision recommending that Walker be given death. This is relevant to the question of whether to grant relief and longer than the deliberations in several other penalty cases in which habeas relief was granted. Bean v. Calderon, 163 F.3d 1073, 1081 (9th Cir.1998) (“[W]e find it noteworthy that the jury was initially divided over the appropriateness of the death penalty, deadlocking as to both murders before ultimately returning a death verdict .... ”); see Murtishaw, 255 F.3d at 974 (discussing the role of the jury in deciding whether to impose the death penalty and granting relief where the jury deliberated for two days before returning the death sentence); see also Roche, 291 F.3d at 484 (noting that after eight hours of deliberating the jury was unable to recommend death).
Shakespeare told us that “[t]he quality of mercy is not strain’d,”[2] Milton instructed us to “temper so [j]ustice with mercy” and advised us that “[mjercy [must] colleague with justice,”[3] and President Lincoln reminded us that “mercy bears richer *951 fruits than strict justice.”[4] This sentiment in the mind of just one juror could have spared Walker the death penalty. The possibility of mercy is not predictable. It cannot be measured with any degree of accuracy. Here, Walker committed the crimes as a teenager, was loved by his girlfriend who felt he was innocent and “did not want him to die,” grew up in poverty, and provided emotional support to his family. See Walker, 253 Cal.Rptr. 863, 765 P.2d at 87. In the penalty phase of Walker’s trial, a church secretary testified that Walker had helped her -with yard work and one of Walker’s friends testified that Walker drove her to work. Id. Under the framework established by the Supreme Court, it would seem that a modern-day Jack the Ripper whose only mitigation was that he was good to his mother could be spared by a jury, indeed a jury can opt for mercy without giving a reason. Given the mitigating evidence presented for Walker, even though it was sparse, and the prejudice that the shackle likely produced, there is a reasonable likelihood the failure of Walker’s counsel to object to the shackle forfeited Walker’s chance at mercy.
I do not disagree with the majority that the shackling of Walker in court during the penalty phase may have been “trivial” in comparison with his horrific crimes and intention to leave no witnesses to his robberies. I could also agree that technically speaking the presumptive prejudice rule of Deck may not apply both because we deal with Strickland prejudice, not shackling due-process prejudice, and because Deck was decided after the state appellate decision here in question. But nonetheless, for the same reasons that animated Deck, we should be concerned that shackling almost certainly would not assist Walker in getting a favorable determination at the penalty phase because it reinforced the idea of Walker’s dangerousness at a time when the jury was tasked with considering whether to extend mercy to him. From the 1970s onward the Supreme Court has had an uneasy truce with the death penalty, permitting it to be applied when all the i’s are dotted, all the t’s are crossed, all formalities followed, and discretion constrained in permissible ways, but also carving out areas where the death penalty cannot be given to certain persons, like the mentally deficient or juveniles. At the same time the Supreme Court has made clear that the mitigation factors that can be considered are open-ended, and should not be limited by state or federal courts, Lockett, 438 U.S. at 604-05, 98 S.Ct. 2954, and that only the jury can make the death-qualifying decision, see Ring v. Arizona, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Although the AEDPA precedents make the result less than clear, given the Supreme Court’s approach to the death penalty in past decades I believe that absent harmless error we must enforce a regime requiring strict compliance with law before implementation of a death penalty. And harmless error cannot be relied upon if there is a reasonable probability that the error affected the vote of one juror because of jury unanimity requirements. I would hold that the death-penalty phase of a capital trial, where jurors have an unconstrained right to prevent death and show mercy in light of unbounded mitigation factors, cannot be properly held while a defendant is shackled before the court and jury without adequate findings and justification for the shackling. To permit that puts a death- *952 heavy thumb on the scale of the jury’s considerations just when the jury is empowered freely to vote for life and mercy rather than death as the ultimate punishment.
I would reverse the decision of the district court as to Walker’s conviction, concluding that the shackling did not prejudice Walker by impacting what I think was the inevitable conclusion of the jury on the evidence and jury instructions. But I would affirm the decision of the district court to grant Walker relief on his death sentence because he should receive another penalty-phase trial at which he is not improperly shackled so that a jury can weigh the aggravating factors relating to his crimes against the mitigating factors of his youth and family relationships before deciding if he is eligible for the punishment of death. I respectfully dissent in part.

.The majority attempts to distinguish this case on the following grounds: (1) that Roche was tried together with a co-defendant who was not shackled giving rise to the presumption that Roche was dangerous whereas Walker was tried alone; (2) that Roche’s restraints were "more extensive" than Walker’s and were actually visible above Roche’s clothes; and (3) that the judge presiding over Roche’s case said nothing to minimize the prejudicial impact of the restraints whereas the judge in Walker’s case did. But Roche is not distinguishable from the present case. While Walker was not tried with a co-defendant, the shackles in Roche were not more obtrusive and prejudicial than those here. Although Roche’s shackles were above his pant leg and Walker's brace was not, "the sole mention” of the existence of the shackles in Roche was when counsel requested that he would like to have Roche seated at the witness chair before the jury came in so that they would not see his leg cuffs. 291 F.3d at 483. In contrast, at Walker's trial, there were several incidents involving the brace that are reflected in the record and are points of concern. The only precaution in this case taken to ensure that Walker’s brace was not visible while he sat as counsel’s table was placing the bulky device under his pant leg.

. William Shakespeare, The Merchant of Venice act 4, sc. 1, 1. 184 (H.L. Withers ed., D.C. Heath & Co. 1916).

. John Milton, Paradise Lost 345, bk. X, 11. 59, 77-78 (Appleton ed. 1851).

. Quotation attributed to Abraham Lincoln from a conversation where Lincoln apparently decided to pardon some young men from New Jersey who had deserted the army, were recaptured, and were sentenced to death. Osborn H. Oldroyd, The Lincoln Memorial: Album-Immortelles 459 (Gem Publ'g House 1882).