**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 1 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HSIU YING TSENG, | No. 22-55401 |
| Petitioner-Appellant, | D.C. No. 2:20-cv-09036-AB-KES |
| v. | |
| MONA D. HOUSTON, Warden, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted February 7, 2024
Pasadena, California

Before: WARDLAW, FRIEDLAND, and SUNG, Circuit Judges.

Dr. Hsiu Ying Tseng appeals the district court's denial of her petition for a writ of habeas corpus. The parties agree that the last reasoned state court decision on the merits is the California Court of Appeal's ruling on Tseng's direct appeal of her conviction, which is published in part at *People v. Tseng*, 241 Cal. Rptr. 3d 194 (Ct. App. 2018). We review de novo the district court's denial of Tseng's habeas

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

petition. *Poyson v. Ryan*, 879 F.3d 875, 887 (9th Cir. 2018). For the reasons stated below, we affirm the denial of habeas relief.

1. The California Court of Appeal's conclusion that there was sufficient evidence from which a rational jury could convict Tseng of the second-degree murder of Vu Nguyen, Steven Ogle, and Joseph Rovero was not objectively unreasonable. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Boyer v. Belleque*, 659 F.3d 957, 964–65 (9th Cir. 2011) ("[T]o grant relief, we must conclude that the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively unreasonable.").

The California Court of Appeal reasonably concluded that there was sufficient evidence that Tseng's acts, i.e., the prescription of drugs to Nguyen, Ogle, and Rovero, proximately caused their deaths. Tseng argues that the presence of methadone in Nguyen's body and alcohol in Rovero's body at the time of death were unforeseeable, independent intervening events that interrupted proximate causation. But expert testimony indicated that the amount of methadone in Nguyen's body and alcohol in Rovero's body at the time of death would not have been lethal absent the presence of drugs prescribed by Tseng. And despite Tseng's incorrect assertion to the contrary, expert testimony plainly indicated that the amount of methadone prescribed by Tseng in Ogle's body at the time of death

2

would have killed him even absent the other drugs found in his body. Under California law, "it has long been recognized that there may be multiple proximate causes of a homicide, even where there is only one known actual or direct cause of death." *People v. Sanchez*, 29 P.3d 209, 216 (Cal. 2001). Accordingly, the California Court of Appeal did not unreasonably conclude that a rational jury could have found proximate causation on this record.

The California Court of Appeal reasonably concluded that there was sufficient evidence that Tseng acted with conscious disregard for the lives of Nguyen, Ogle, and Rovero. The evidence relied on by the state court includes: (1) Tseng's occupation as a licensed physician with "expert knowledge of the life-threatening risk posed by her drug prescribing practices;" (2) Tseng's admission to undercover DEA agents that she understood that the drugs she was prescribing should only be used to treat severe pain from broken bones or cancer; (3) Tseng's referral of patients to smaller pharmacies after larger pharmacies refused to continue filling her prescriptions; (4) Tseng's awareness that Nguyen, Ogle, and Rovero were already taking extremely high doses of opioids when they first visited her clinic; (5) Tseng's knowledge of three recent patient deaths possibly connected to her prescriptions during the period she was treating Nguyen, four during the period she was treating Ogle, and eight by the time she treated Rovero; and (6) Tseng's repeated writing of refill prescriptions for Nguyen and Ogle when they

used up large prescriptions in a short amount of time.

Tseng argues that when she was contacted by the coroners' offices regarding other patient deaths, "[s]he was never told that anything she had done was the cause of or contributed to that death." But even if Tseng were correct that no one explicitly informed her that her prescription practices were endangering the lives of her patients, that does not mean that Tseng lacked awareness that her patients were dying of drugs that she prescribed. A reasonable jury could find that Tseng, as a licensed medical doctor, could make that connection on her own.

2. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") bars Tseng's legal claim that the admission of "other act" evidence violated her due process rights. *See* 28 U.S.C. § 2254(d)(1). As Tseng concedes, there is no clearly established Supreme Court precedent on whether allowing "other act" evidence violates due process. Dkt. No. 15 at 86; Petition for Writ of Certiorari at 11, *Tseng v. California*, 140 S. Ct. 208 (2019) (No. 18-9774) ("This Court has thus far not held that the admission of propensity evidence in violation of state law rules is a matter of federal due process. The issue was left open in *Estelle v. McGuire*, 502 U.S. 62 (1991)."); *see also Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008). AEDPA therefore bars Tseng's due process claim.

We also disagree with Tseng's alternative argument that the state trial court's decision to admit evidence of uncharged deaths rested on an unreasonable

4

determination of the facts under 28 U.S.C. § 2254(d)(2). Tseng argues that "Ryan Latham was found to have committed suicide," "Joshua Chambers and Joseph Gomez overdosed on heroin and Michael Katsnelson died of a pre-existing heart condition." Thus, Tseng claims that her "prescribing practices had nothing to do with" the deaths of Latham, Chambers, Gomez, and Katsnelson. The California Court of Appeal reasonably concluded otherwise.

Ryan Latham's manner of death was listed as suicide, but the cause of death was "acute polydrug intoxication, combined effects of hydrocodone/ dihydrocodeine, carisoprodol/meprobamate, diazepam, and alprazolam." Tseng does not dispute that she prescribed hydrocodone, alprazolam, and carisoprodol to Latham six days before his death. Accordingly, there is evidence that belies Tseng's claim that Latham's death "had nothing to do with Tseng's prescribing practices."

As to Chambers and Gomez, Tseng emphasizes her own selective characterization of the testimony of a toxicology expert over the official coroners' documentation. But the officially documented causes of death for Chambers and Gomez were "combined effects of morphine, codeine, hydrocodone/ dihydrocodeine," (Chambers) and "[c]ombined intoxication of alprazolam, codeine, morphine, oxycodone, and oxymorphone," (Gomez). Tseng had prescribed hydrocodone and alprazolam to Chambers four days before his death

5

and had prescribed oxycodone, alprazolam, and carisoprodol to Gomez two days before his death. The California Court of Appeal could therefore also reasonably reject Tseng's argument that Chambers' and Gomez's deaths "had nothing to do with Tseng's prescribing practices."

As to Michael Katsnelson, Tseng is correct that the California Court of Appeal mistakenly characterized Katsnelson's death as an overdose, when the coroner's report listed the official cause of death as "cardiac hypertrophy, bilateral pulmonary congestion" and the manner of death as "natural death." The state trial court, however, did not err when it allowed the prosecution to admit Katsnelson's death to show that Tseng had, or should have had, notice, as well as to show Tseng's "intent (implied malice), knowledge, and/or absence of mistake"—all permissible purposes under California Evidence Code § 1101(b). The coroner had not yet determined Katsnelson's cause of death when the coroner called Tseng about Katsnelson, Tseng then entered an alert in Katsnelson's file noting that the coroner called her to inform her of Katsnelson's death, and later, Tseng altered Katsnelson's medical records as she had done with other patients who she was informed had died from suspected overdoses.[1]

---

[1] Even if the state trial court erred in admitting evidence of Katsnelson's death to show notice, Tseng fails to establish "actual prejudice" under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The only alleged murder for which Katsnelson's death was relevant was Joseph Rovero's, the only charged death

3. The California Court of Appeal reasonably concluded that two incidents of prosecutorial misconduct did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (cleaned up). The prosecutors immediately admitted the mistakes; they did not attempt to connect Tseng to the improperly elicited testimony; the state trial court provided curative jury instructions; and the other evidence against Tseng was weighty. *See Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005).

4. AEDPA bars Tseng's claim that the state trial court's allowance of supplemental closing arguments violated her due process rights, because there is no clearly established Supreme Court precedent on this issue. *See* 28 U.S.C. § 2254(d)(1).

5. The California Court of Appeal reasonably concluded that Tseng's cumulative error claim fails because the state trial court did not constitutionally err.

**AFFIRMED.**

---

following Katsnelson's death. By that point, even excluding Katsnelson's death, Tseng was aware that seven of her patients had died from overdoses connected to her prescriptions. Therefore, even if the state trial court erred in admitting evidence of Katsnelson's death, the error did not cause "a 'substantial and injurious effect or influence' on the verdict." *Brown v. Davenport*, 596 U.S. 118, 133 (2022) (quoting *Brecht*, 507 U.S. at 637).